15 So.3d 69 (2009)
STATE of Louisiana
v.
Demarcus Kentrell HOLLINS.
No. 2008-K-1033.
Supreme Court of Louisiana.
June 26, 2009.
*70 Samuel D'Aquilla, District Attorney, Amanda Murray McClung, Kathryn Elizabeth Jones, Assistant District Attorneys, for Applicant.
Benn Hamilton, Baton Rouge, for Respondent.
VICTORY, J.[*]
We granted this writ application to determine whether the trial court erred in failing to give a requested special jury instruction on accomplice testimony, and if so, whether this failure constitutes reversible error. After reviewing the record and the applicable law, we reverse the judgment of the court of appeal and find that the trial court did not err in refusing to give the special jury instruction.

FACTS AND PROCEDURAL HISTORY
On October 24, 2005, at approximately 2:00 p.m., defendant DeMarcus Hollins ("defendant") and his friend Jonathan Fields ("Fields") were driving southbound on Highway 19 in Slaughter, Louisiana, when Officer Dwayne Wheeler observed that neither defendant nor his passenger, Fields, were wearing seat belts and he initiated a traffic stop on that basis. Officer Wheeler recognized defendant from previous traffic stops and narcotics violations.[1] After defendant's vehicle was pulled over and without being requested to do so, defendant exited the vehicle and stepped to the back of the vehicle to speak with the officer. Officer Wheeler noticed defendant and Fields repeatedly exchanging looks at one another. The officer asked for defendant's driver's license and defendant began fumbling in his front and back pockets as his eyes darted back and forth to his own vehicle and to Fields. Defendant's hands were shaking and he was trembling and fidgety. Because he considered this behavior to be suspicious, Officer Wheeler inquired if defendant had any weapons or narcotics on his person or in the vehicle and obtained defendant's consent to search the vehicle. He asked defendant to turn around and place his hands on the rear of his vehicle so he could pat him down. Instead of putting his hands on the rear of the vehicle, which was close enough so that he would not have to move, defendant walked left toward the driver's side of the vehicle, even though the passenger side was closer, and looked back and forth at the officer and into the vehicle at Fields. As he began patting defendant down, Fields opened the passenger door and took off running. Officer Wheeler gave chase but was unable to apprehend Fields. Defendant was arrested on the traffic violations and transported to the police station. No drugs were found on defendant's person or in his vehicle.
Approximately an hour later, another officer apprehended Fields about a mile from the scene of the traffic stop and he was taken to the police station. Fields was initially reluctant to talk to police, but eventually admitted to Officer Kenny Stewart, with whom he was acquainted, that when defendant saw that he was *71 about to be stopped by the police, he handed Fields a plastic bag containing drugs, which Fields placed in his boxers, and told him that if the police started to search him, that Fields was to run. Fields was surprised when defendant handed him the bag and stated he did not know what it was. Fields told the officer that he dropped the bag in an area behind a certain building, and the officers recovered the bag from that location. Subsequent testing revealed the bag contained 4.22 grams of cocaine.
The State charged defendant with simple possession of cocaine. Fields was never charged with any crime stemming from this incident. The trial court denied defendant's motion to suppress and the State proceeded to trial on December 11, 2006. The police officers and Field testified on behalf of the State; defendant did not testify. At the conclusion of the testimony, defendant requested a special jury instruction be given on accomplice testimony. The trial judge refused to give the instruction, finding that it was not necessary because Fields was not an accomplice and his testimony was corroborated by other evidence. The jury found defendant guilty as charged and he was sentenced to five years imprisonment at hard labor.
The court of appeal reversed defendant's conviction, vacated his sentence and remanded for a new trial, finding that the trial court's failure to give the accomplice jury instruction was reversible error. State v. Hollins, 07-1569 (La.App. 1 Cir. 4/9/08) (unpublished). We granted the State's writ application to consider whether the trial court committed reversible error in failing to give the accomplice instruction in this case. State v. Hollins, 08-1033 (La.1/30/09), 999 So.2d 766.

DISCUSSION
La.C.Cr.P. art. 802 requires the trial court to charge the jury as to the law applicable to the case. Under La.C.Cr.P. art. 807, a requested special jury charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly correct and pertinent. The special charge need not be given if it is included in the general charge or in another special charge to be given. State v. Segers, 355 So.2d 238, 244 (La. 1978). Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Marse, 365 So.2d 1319, 1322-24 (La.1978); La.C.Cr.P. art. 921.
In Louisiana, as a general principle of law, a conviction may be sustained on the uncorroborated testimony of a purported accomplice, although the jury should be instructed to treat such testimony with great caution. State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, 928, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248; State v. May, 339 So.2d 764, 775 (La.1976); State v. Matassa, 222 La. 363, 62 So.2d 609 (1952).[2] However, where *72 there is material corroboration of the accomplice's testimony, the cautionary accomplice instruction is not required. State v. Schaffner, 398 So.2d 1032, 1035 (La. 1981); State v. Murray, 375 So.2d 80 (La. 1979) (citing U.S. v. Lee, 506 F.2d 111 (D.C.Cir.1974);[3]U.S. v. Clark, 480 F.2d 1249 (5th Cir.(Ga.) 1973); Davis v. U.S., 411 F.2d 1126 (5th Cir.(Tex.) 1969); U.S. v. Cianchetti, 315 F.2d 584 (2nd Cir.(Conn.) 1963)). Whether to give the accomplice instruction is within the sound discretion of the trial court. Schaffner, supra at 1035.
In this case, defendant's conviction was sustained on the testimony of Fields. While the jury was given the general charge relating to the credibility of witnesses,[4] it was not given a special charge relating to accomplice testimony. To determine whether the trial court abused its discretion in refusing to give the special jury charge, we must first consider whether Fields was an "accomplice," and, if so, whether his testimony was uncorroborated. The is no statutory definition of "accomplice" in our codes or statutes. In Louisiana, parties to a crime are either principals, La. R.S. 14:24, or accessories after the fact. La. R.S. 14:26. This Court first defined an accomplice in 1945 in connection with accomplice testimony as "one who is associated with others in the commission of a crime." State v. Gunter, 208 La. 694, 23 So.2d 305, 311 (1945). This fits within the definition of a principal under La. R.S. 14:24, which defines a principal as "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime..." As we further stated in Gunter, a *73 person can be an accomplice regardless of whether or not he has been convicted of or pled guilty to the crime. Gunter, supra at 311.
In this case, Fields was clearly an accomplice with the defendant in possessing the drugs. While Fields may not have known the defendant possessed drugs prior to the time they were pulled over by the police and defendant gave him the drugs, he surely became a principal when he took the drugs and escaped with the drugs to avoid either of them being caught with the drugs. As found by the court of appeal, it is irrelevant that Fields was never arrested or charged with a crime arising from this incident, and his own testimony associates him with the defendant in the commission of the crime of possession of cocaine. The trial court's finding that Fields was not an accomplice was erroneous.
However, the trial court's finding that Fields' testimony was corroborated was not an abuse of discretion. An accomplice's testimony is corroborated "if there is evidence that confirms material points in an accomplice's tale, and confirms the defendant's identity and some relationship to the situation." Schaffner, supra at 1035; see also State v. Washington, 407 So.2d 1138, 1147 (La.1981); Murray, supra at 88-89.
The State argues that the defendant's suspicious activity after he was pulled over corroborates Fields' testimony that defendant gave him the bag of cocaine and told him to run if he was searched. Defendant did several things which indicate that this story is true. First, defendant exited the vehicle and stepped to the back of the vehicle to speak with the officer, even though he was not requested to do so, which separated him from the drugs. Second, the defendant and Fields repeatedly exchanged looks at one another. When the officer asked for defendant's driver's license, defendant began fumbling in his front and back pockets as his eyes darted back and forth to his own vehicle and to Fields, and his hands were shaking and he was trembling and fidgety. After he gave his consent to search the vehicle and was asked by the officer to turn around and place his hands on the rear of the vehicle, defendant instead walked left toward the driver's side of the vehicle, even though the passenger side was closer, and looked back and forth at the officer and into the vehicle at Fields. By situating himself and the officer on the driver's side of the vehicle, he gave Fields the opportunity to open the passenger door and run away with the drugs. Finally, after Fields was apprehended and taken to the police station, he told the police his story, including where to find the drugs, even though if he had said nothing, the police would never have known there were drugs involved at all. If the drugs had been Fields all along, presumably he would not have told the police about them and where they were. Defendant's furtive and purposeful actions after being stopped by the police, along with the fact that Fields told the police about the drugs, corroborates his story that defendant gave him the drugs and told him to run away with them. Therefore, because Fields's testimony was corroborated, the accomplice instruction was not required.

CONCLUSION
Under Louisiana law, a conviction may be sustained on the uncorroborated testimony of a purported accomplice. However, where an accomplice's testimony is uncorroborated, the jury must be given a special instruction to treat such testimony with great caution. In this case, defendant was convicted upon Field's testimony. However, although Field's was an accomplice, his testimony was not uncorroborated. As detailed in this opinion, his *74 suspicious actions upon being pulled over by Officer Wheeler confirms material points in Field's testimony. Because Field's testimony was corroborated, the general instruction sufficed to apprise the jury of the proper weight to be given his testimony.

DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and the defendant's conviction and sentence are reinstated.
REVERSED.
JOHNSON, Justice dissents and assigns reasons.
JOHNSON, J., Dissents and assigns reasons.
I would affirm the reversal of defendant's conviction and sentence for the reasons assigned by the First Circuit Court of Appeal.
NOTES
[*] Retired Judge Philip Ciaccio, assigned as Justice ad hoc, sitting for Justice Chet D. Traylor, now retired.
[1] This fact was not told to the jury.
[2] The wording of the jury instruction on accomplice testimony requested by defendant is not in the record. However, this Court has approved the following instruction delivered by a trial judge:

An accomplice is defined as one who is associated with another in the commission of a crime and an accomplice is a competent witness, either for the State or for the defendant. Whether the accomplice has been convicted or not, whether he has pleaded guilty or nol [prosequied] or dismissal has been entered into, or whether he be joined in the same Bill of Information or indictment with the person on trial or not, corroboration is desirable, but it is not always indispens[a]ble. The jury may convict on his uncorroborated testimony. And while it is not the rule of law, it is rather the rule of our experience in dealing with that class of testimony that while you may convict upon the uncorroborated testimony of an accomplice, still you should act upon his testimony with great caution, subject to careful examination of the weight of the other evidence in the case. And you are not to convict upon such testimony alone unless satisfied, after a great careful examination of its truth, that you feel you can safely rely on it. What the law means by corroboration of the testimony of an accomplice is not merely the corroboration of the accomplice's narrative and the mere details of how the crime was committed or the crime charged was committed, but some real and independent corroboration intending to implicate the defendant in the commission of the offense charged. It is not sufficient to corroborate an accomplice as to the facts of the case. Generally, he should be corroborated as to some material fact which tends to prove that the accused was connected with the crime that's charged.
May, supra at. 775.
[3] Murray cited the following observation made in United States v. Lee:

When there is no corroboration, the problem of perjury looms large and warrants a judicial exposition of the frailties of accomplice testimony. When the accomplice's testimony is corroborated in material degree, there is no significant special problem of perjury; the persisting problem of perjury in fact in the specific case is like that which besets trials generally. The jury has the benefit of the general instruction on credibility, of its own awareness of the witness' criminality, and of the latitude given defense counsel to explore the witness' possible interest, both by eliciting facts and by discourse in argument. If now the judge gives a special warning he may be unduly tilting the jury's consideration.
[4] The jury was charged as follows:

In evaluating the testimony of a witness you may consider his or her ability and opportunity and remember the matter about which he or she testified, his or her manner while testifying, and any reason he or she may have for testifying in favor of or against the State or the defendant and the extent to which the testimony is supported or contradicted by other evidence.